**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOHN F. CARROLL,
                               Plaintiff,

  v.                                            No. 05-CV-1427
                                                      (LEK/DRH)
PATRICIA CALLANAN; MEGAN MacTAVISH;
SUSAN VERBEKE; JEAN KING; CHARLES
FINN; MARILYN BERLIN; and ALL OTHERS
KNOWN AND UNKNOWN,

                              Defendants.

---

**APPEARANCES:**                             **OF COUNSEL:**

JOHN F. CARROLL
No. 98-A-2128
Plaintiff Pro Se
Washington Correctional Facility
Post Office Box 180
Comstock, New York 12821

HON. ANDREW M. CUOMO            JEFFREY P. MANS, ESQ.
Attorney General for the                Assistant Attorney General
  State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

Plaintiff pro se John F. Carroll ("Carroll"), an inmate in the custody of the New York

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

State Department of Correctional Services ("DOCS"), brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, six DOCS employees and others, violated his constitutional rights under the First and Fourteenth Amendments.  Compl. (Docket No. 1).  Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the grounds that the claims are barred by the doctrine of collateral estoppel and, alternatively, Carroll's complaint fails to state a claim.  Docket No. 14.  Also pending is Carroll's cross-motion to stay the Court's decision until his pending state court appeals are resolved.  Docket No. 15.  For the following reasons, it is recommended that defendants' motion be granted in part and denied in part and it is ordered that Carroll's cross-motion be denied.

## I. Background

The facts as alleged in the complaint are assumed to be true for the purposes of this motion.  See Section II(A) infra.

At all relevant times, Carroll was an inmate in the custody of DOCS.  See Compl. at ¶ 2. On September 6, 2002, while at Greene Correctional Facility ("Greene"), Carroll met with corrections counselor Miller who informed him that his assessed program needs included, inter alia, anger management ("ART") and sex offender treatment ("SOP").  Id. at ¶ 23.  On December 4, 2002, defendant Callanan, Carroll's new counselor, informed him that he would also be required to participate in an alcohol substance abuse treatment program ("ASAT").  Id. at ¶ 24.  However, on the advice of his attorney, Carroll delayed enrollment "in any and all therapeutic programs" until all ongoing appeals arising from his criminal conviction were resolved.  Id. at ¶¶ 23, 25.  As a result, Carroll's counselors classified his

responses as refusing to participate instead of noting that he planned to participate in such programs in the future.  Id. at ¶ 23.

During subsequent quarterly reviews, defendants threatened Carroll with disciplinary action and transfer from Greene unless he participated in the treatment programs.  Id. at ¶¶ 26, 31.  Defendants also altered the quarterly reviews after Carroll had signed them and they failed to record his comments under the "Inmate Comments" section.  Id. at ¶¶ 27-28.  In response, Carroll filed a grievance on July 4, 2003 which resulted in an informal meeting with defendants.  Id. at ¶ 31.  However, during the meeting, defendant MacTavish continued to threaten Carroll with disciplinary action and transfer to a different facility unless he participated in the treatment programs.  Id.  Subsequently, Carroll attempted to file grievances to resolve these matters but was unable because defendants either ignored his complaints or destroyed the grievances.  Id. at ¶¶ 34-35.

On March 4, 2004, a transfer review was held outside of Carroll's presence.  Id. at ¶ 38.  The review noted that Carroll was a low priority, general purpose transfer with no problems regarding the current treatment programs.  Id.  After learning of the transfer review, Carroll filed a grievance in an attempt to learn more about a possible pending transfer to another facility.  Id. at ¶ 39.  In response to the grievance, defendants held a hearing on April 1, 2004 and informed Carroll that there was no mention in his records of a pending transfer.  Id. at ¶ 40.  On or about April 17, 2004, Carroll filed an Article 78 petition and order to show cause[2] in the Greene County, New York Supreme Court requesting, inter

---

[2]N.Y. C.P.L.R. art. 78 (McKinney 1994 & Supp. 2006) establishes the procedure for judicial review of the actions and inactions of state and local government agencies and officials.

3

alia, an injunction to prevent him from being transferred. Id. at ¶ 41. On April 20, 2004, a new transfer review was submitted which superceded the March 4, 2004 transfer review and recommended that Carroll be moved from Greene, which was near his family. Id. at ¶ 42. On May 8, 2004, Carroll was transferred to Bare Hill Correctional Facility ("Bare Hill"), approximately 240 miles away from his family. Id. at ¶ 42. This action followed.

## II. Discussion

Carroll asserts sixteen causes of action, alleging, inter alia, that defendants threatened to issue him misbehavior reports, interfered with his ability to file grievances, violated his due process and equal protection rights,[3] and retaliated against him after he filed a lawsuit against defendants in violation of the First and Fourteenth Amendments. See Compl. at ¶¶ 51-66. Defendants seek dismissal of all claims.

### A. Motion to Dismiss

Fed. R. Civ. P. 12(b)(6) authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-

---

[3] The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. Essential to that protection is the guarantee that similarly situated persons be treated equally. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). "'To prove an equal protection violation, claimants must prove purposeful discrimination . . . directed at an identifiable or suspect class.'" Doe v. Goord, No. 04 Civ. 0570(AJP), 2004 WL 2829876, at *14 (S.D.N.Y. Dec. 10, 2004) (quoting Giano v. Senkowski, 54 F.3d 1050, 1057 (2d Cir. 1995)). Here, liberally construing the complaint, Carroll has failed to allege any facts that could be reasonably interpreted as an Equal Protection violation. Therefore, Carroll's equal protection claims should be dismissed.

movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994).  Dismissal is only warranted if it appears beyond a reasonable doubt that the non-moving party can prove no set of facts in support of his or her claim which would be entitled to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  In evaluating whether these requirements are met, complaints prepared pro se are held to less stringent standards than formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

When a motion to dismiss is brought prior to an answer and discovery, a court is loath to grant the motion.  Lugo v. Senkowski, 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000) (Kahn, J.) (citing Wade v. Johnson Controls, Inc., 693 F.2d 19, 22 (2d Cir. 1982)).  This is true even if "the plaintiff is unlikely to prevail, unless the defendant can demonstrate that plaintiff is unable to prove facts which would entitle him [or her] to relief."  Id.  "'This caution against dismissal applies with even greater force where the complaint is pro se, or where the plaintiff complains of a civil rights violation.'"  Lugo, 114 F. Supp. 2d at 113 (citation omitted); see also Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006).

### B. Collateral Estoppel

"Under . . . 28 U.S.C. § 1738 . . . federal courts must give a prior state court judgment the same preclusive effect that such a judgment would be given in the courts of the state from which the judgment emerged."  Giakoumelos v. Coughlin, 88 F.3d 56, 59 (2d Cir. 1996) (citing Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466 (1982)); see also Johnson v. Watkins, 101 F.3d 792, 794 (2d Cir. 1996).  This rule applies equally to actions

brought pursuant to 42 U.S.C. § 1983.  See id.  Under New York law,

> a party is barred from relitigating an issue if the following requirements are met: (1) the issue as to which preclusion is sought is identical to the issue decided in the prior proceeding; (2) the issue was necessarily decided in the prior proceeding; and (3) the litigant now opposing preclusion had a full and fair opportunity to litigate the issue in the prior proceeding.

Owens v. Treder, 873 F.2d 604, 607 (2d Cir. 1989) (citing Capital Tel. Co. v. Patersonville Tel. Co., 436 N.E.2d 461, 463 (N.Y. 1982)).  "The party asserting [collateral estoppel] bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding."  Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir. 1995) (citing Kaufman v. Eli Lilly & Co., 482 N.E.2d 63, 67 (N.Y. 1985)).

Here, defendants contend that Carroll's claims are collaterally estopped by the judgment in the Article 78 proceeding.  See Compl. at ¶ 41.  "[A] judgment in an Article 78 proceeding precludes relitigation of those issues already decided in that judgment."  Watkins v. Annucci, No. Civ. 02-4475 (DAB), 2006 WL 722005, at *4 (S.D.N.Y. Mar. 22, 2006); see also Giakoumelos, 88 F.3d at 61 ("[Plaintiff] chose to litigate his claims by way of an Article 78 proceeding.  Collateral estoppel in a subsequent § 1983 action is one of the risks attendant to his decision to follow that route.").

The record here is unclear as to the exact nature of the claims raised by Carroll in the Article 78 proceeding.  Although the state court judgment summarizes the arguments made by Carroll in support of his petition, evidence of the precise claims asserted by Carroll in that action has not been presented.  Absent reasonable certainty as to those claims, it would be premature to rule on the collateral estoppel issue without a more extensive record.  Therefore, it is recommended that defendants' motion on this ground be denied without

prejudice to renewal upon a more complete record.

### C. Due Process

In his first, third, fourth, and fifth causes of action, Carroll contends that requiring his participation in an ASAT program violates his due process rights under the Fourteenth Amendment. See Compl. at ¶ 51. Carroll also alleges that defendants repeatedly altered his quarterly reviews after he had reviewed and signed them, utilized improper program codes, and omitted his comments from the computerized copies of the quarterly reviews. See id. at ¶¶ 53-55. Defendants contend that Carroll has failed to state a cognizable constitutional claim in these causes of action.

As a threshold matter, an inmate asserting a violation of his or her right to due process must establish the existence of a protected interest in life, liberty, or property. See Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001). To establish a protected liberty interest, a prisoner must satisfy the standard set forth in Sandin v. Conner, 515 U.S. 472, 483-84 (1995). This standard requires a prisoner to establish that the confinement was atypical and significant in relation to ordinary prison life. See Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996).

Carroll contends that defendants failed to establish that he needed an ASAT program and that on the advice of his attorney, he would not participate in any therapeutic programs until his appeals in state court regarding his criminal conviction were exhausted. See Compl. at ¶ 25. However, the Supreme Court has held that "[a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate

7

penological objective, does not . . . constitute [an] atypical and significant hardship[ ] in relation to the ordinary incidents of prison life." McKune v. Lile, 536 U.S. 24, 37-38 (2002). "Since 'most offenders will eventually return to society, [a] paramount objective of the corrections system is the rehabilitation of those committed to its custody.'" Id. at 36 (quoting Pell v. Procunier, 417 U.S. 817, 823 (1974)). Thus, Carroll has failed to allege a protected liberty interest regarding his refusal to participate in the ASAT program.

Carroll also alleges that as a result of his non-participation, defendants threatened to penalize him by transferring him farther away from his home. See Compl. at ¶ 31. However, "[a] prisoner has no liberty interest in remaining at a particular correctional facility." Davis v. Kelly, 160 F.3d 917, 920 (2d Cir. 1998); see also McKune, 536 U.S. at 39-40. Further, Carroll fails to allege that his refusal to participate in the ASAT program extended the term of his incarceration or affected his eligibility for good-time credits or parole. See McKune, 536 U.S. at 38-40. Moreover, Carroll's allegations that defendants altered his quarterly reviews, utilized improper program codes, and omitted his comments from the computerized copies of the quarterly reviews fail to state cognizable constitutional claims.

Therefore, it is recommended that defendants' motion on this ground be granted as to the first, third, fourth, and fifth causes of action.

### D. Retaliation

In his thirteenth,[4] fourteenth, and fifteenth causes of action, Carroll alleges that

---

[4] In his complaint, Carroll identifies paragraphs sixty-three and sixty-four as his fourteenth cause of action. See Compl. at ¶¶ 63-64. However, the Court will treat

defendants transferred him to a different facility in retaliation for his filing an Article 78 petition.  See Compl. at ¶¶ 63-65.

To state an actionable claim for retaliation, a plaintiff must first allege that the plaintiff's conduct was constitutionally protected and that this protected conduct was a substantial factor that caused the adverse action against plaintiff.  Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001), overruled on other grounds, Swierkiewicz v. Sorema, 534 U.S. 506 (2002).  Retaliation claims are actionable because they may tend to chill an individual's exercise of constitutional rights.  Id. at 491.  However, courts must view retaliation claims with care and skepticism to avoid judicial intrusion into prison administration matters.  Id.  Conclusory allegations alone are insufficient to overcome a motion to dismiss in a civil rights action.  Barr v. Abrams, 810 F.2d 358, 363 (2d Cir. 1987).

Here, Carroll alleges that as a result of his filing an Article 78 petition, defendants transferred him to Bare Hill, which is 240 miles away from his home.  See Compl. at ¶¶ 42, 63-65.  Carroll's filing of an Article 78 petition was clearly an assertion of a constitutional right and the transfer to a facility significantly farther away from his home could constitute an adverse action.  Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996).  Although prison officials have broad discretion to transfer inmates, they may not "transfer them solely in retaliation for the exercise of constitutional rights."  Meriwether v. Coughlin, 879 F.2d 1037, 1045-46 (2d Cir. 1989); see also Kelly, 160 F.3d at 920.  Carroll alleges that after serving the defendants with the Article 78 petition on April 17, 2004, defendants performed an unscheduled transfer review on April 20, 2004 and requested that Carroll be transferred

---

paragraph sixty-three as Carroll's thirteenth cause of action and sixty-four as his fourteenth cause of action.

9

from his home area.  See Compl. at ¶¶ 41-42.  On May 8, 2004, Carroll was transferred to Bare Hill.  Id.  Thus, Carroll has sufficiently alleged a causal connection between the filing of his Article 78 petition and the alleged retaliatory transfer to Bare Hill.

Therefore, defendants' motion on this ground should be denied.

### E. Threats and Verbal Harassment

In his second, sixth, seventh, eighth, and ninth causes of action, Carroll alleges that defendants threatened to transfer him to another facility and file misbehavior reports against him.  See Compl. at ¶¶ 52, 56-58.  However, verbal harassment or threats in a prison setting do not rise to the level of a constitutional violation.  See Ebron v. Lantz, No. Civ. 04-1375 (MRK), 2006 WL 18827, at *3-4 (D. Conn. Jan. 4, 2006) (citing cases); see also Nilsson v. Coughlin, No. Civ. 86-7135 (LLS), 1987 WL 12823, at *3 (S.D.N.Y. June 18, 1997) (holding that an inmate's allegation that defendant threatened to file false misbehavior reports against him failed to state a claim).

Therefore, it is recommended that Carroll's claims as to verbal harassment and threats in his second, sixth, seventh, eighth, and ninth causes of action be dismissed.

### F. Access to Courts

In his twelfth cause of action, Carroll alleges that defendant Callanan refused to allow him to meet with his attorney.  See Compl. at ¶ 62.

All persons have a constitutional right of access to the courts.  Lewis v. Casey, 518 U.S. 343, 350 (1996); Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997).  To establish

a violation of the right of access to the courts, a prisoner must demonstrate that his or her efforts to pursue a legal claim were impeded. Lewis, 518 U.S. at 351; Bourdon v. Loughren, 386 F.3d 88, 92-93 (2d Cir. 2004). A plaintiff must demonstrate not only that a defendant's conduct was deliberate and malicious but also that this conduct caused an actual injury such as the "dismissal of an otherwise meritorious legal claim." Cancel v. Goord, No. Civ. 00-2042 (LMM), 2001 WL 303713, at *4 (S.D.N.Y. Mar. 29, 2001) (citing Lewis, 518 U.S. at 351)). Here, Carroll alleges that as a result of Callahan's refusal to allow him to meet with his attorney, he was "time-barred from filing an appeal from a lower court decision in an unrelated criminal action." Compl. at ¶¶ 37, 62. Thus, Carroll has sufficiently stated a claim for denial of his access to the courts.

Therefore, it is recommended that defendants' motion on this ground be denied as to Carroll's twelfth cause of action.

### G. Grievance Process

In his eighth, ninth, tenth, and eleventh causes of action, Carroll alleges that defendants Finn, Berlin, MacTavish, and King repeatedly interfered with his attempts to file grievances and failed properly to investigate his complaints. See Compl. at ¶¶ 58-61.

Although inmates have a First Amendment right to meaningful access to the courts and to petition the government for the redress of grievances, "inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures do[] not give rise to a cognizable § 1983 claim." Shell v. Brzezniak, 365 F. Supp. 2d 362, 370 (W.D.N.Y. 2005) (citing Cancel v. Goord, No. Civ. 00-2042 (LMM), 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001)); see also Brown v.

11

Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994) ("Inmates do not have a constitutionally protected right to a grievance procedure."). Thus, "the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." Shell, 365 F. Supp. 2d at 370. Moreover, as to Carroll's allegation that King did not "properly and fully investigate the grievance filed by [Carroll] on or about June 3, 2004," he has failed to state a claim because "the manner in which a grievance is investigated is not constitutionally protected." Mitchell v. Bell, No. Civ. 04-1490 (DNH/GJD), 2006 WL 3043126, at *11 (N.D.N.Y. Oct. 23, 2006) (citations omitted).

      Therefore, it is recommend that defendants' motion on this ground be granted as to the eighth, ninth, tenth, and eleventh causes of action.

### III. Cross-Motion for a Stay

      In his cross-motion for a stay, Carroll contends that this Court should withhold its decision until he has an opportunity to "fully resolve the state court proceedings," because "[t]he failure to do so could impact the issue of collateral estoppel by interfering with [his] ability to 'fully and fairly' litigate the issues in the state court prior to the deciding of Defendants' motion to dismiss." Docket No. 15 at ¶ 8. However, under New York law, "res judicata and collateral estoppel apply once final judgment is entered in a case, even while an appeal from that judgment is pending." Chariot Plastics, Inc. v. United States, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998) (citing Petrella v. Siegel, 843 F.2d 87, 90 (2d Cir. 1988)); see also Huron Holding Corp. v. Lincoln Mine Operating Co., 312 U.S. 183, 189 (1941).

Accordingly, no sufficient reason appears to stay proceedings in this case and it is ordered that Carroll's cross-motion for a stay be denied.[5]

## IV. Conclusion

For the reasons stated above, it is hereby:

**RECOMMENDED** that defendants' motion to dismiss (Docket No. 14) be:

   1. **GRANTED** as to all moving defendants in all respects as to the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and sixteenth causes of action; and

   2. **DENIED** as to the twelve, thirteenth, fourteenth, and fifteenth causes of action; and

**IT IS ORDERED** that Carroll's cross-motion for a stay (Docket No. 15) is **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: March 14, 2007
       Albany, New York

*David R. Homer*
United States Magistrate Judge

---

[5] Although Carroll has not answered defendants' motion to dismiss, he will have an opportunity to present his objections, if any, to this report-recommendation before the district court.